**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**



UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                    Plaintiff,

          v.

CHARLES T. LAWRENCE, JR.,

                    Defendant,

and

LANDES PRIVE, LLC, LANDES AND
COMPAGNIE TRUST PRIVE aka LANDES
AND COMPAGNIE TRST PRIVE KB,
HEKYEAH, LLC, JUSTIN D. SMITH, and
BRENDA M. BISNER,

                    Relief Defendants.

Case No. **23-C-0550**
_____

**JURY TRIAL DEMANDED**
**CASE FILED UNDER SEAL**

## CASE FILED UNDER SEAL

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC") alleges as follows:

### NATURE OF THE CASE

1.      From at least February 2022 through the present, Defendant Charles T. Lawrence, Jr. ("Lawrence") engaged in a fraudulent scheme involving Landes and Compagnie Trust Privé KB ("Swedish Landes KB"), a purported Swedish financial services company with United States-based subsidiaries. Lawrence represented to investors that he was the Managing Director of Swedish Landes KB.

2.      Lawrence raised approximately $4.9 million through the fraudulent offer and sale of investment contracts to at least 11 investors, 7 of whom reside in 6 states in the United States and 4 of whom reside abroad. At least 2 of the 7 United States-based investors reside in this District. At least 5 of the 11 investors signed a contract called "Agreement for Financial and Trade Services" (the "Agreement") with Swedish Landes KB, with Lawrence signing as the entity's Managing Director.

3.      Lawrence told prospective investors that the investment contracts he offered were expected to provide weekly returns of 25% to 100% during the investment period, which he said would last between 8 and 20 weeks. Lawrence also told prospective investors that their invested funds would be "blocked" during the trading period and not be at risk. Lawrence further claimed that investor funds would be placed in unique Swedish Landes KB non-depletion accounts and would be visible to the investor for the duration of the investment.

4.      Lawrence made additional oral representations to prospective investors. For example, he said that he intended to use investor funds to obtain a standby letter of credit or other collateral to facilitate Lawrence's trading in securities and other assets on behalf of the investors. He also told prospective investors that the returns on the investment would be shared *pro rata* among investors.

5.      After they agreed to invest, Lawrence instructed investors to wire funds to a United States-based bank account at Financial Institution 1 in the name of Relief Defendant Landes Prive, LLC ("Landes Prive"), over which Lawrence had sole control. Contrary to Lawrence's representations about the safety and use of investor funds, from at least February 2022 to the present, Lawrence diverted and misappropriated at least $4.89 million of the $4.9 million raised from 11 investors. Lawrence regularly misappropriated investor funds shortly after

2

the investors sent their funds to the Landes Prive bank account. He never used investor money to procure a standby letter of credit or other collateral to facilitate securities trades or otherwise invest on behalf of the investors.

6.      Instead, Lawrence spent investor funds on personal expenses, including at least $1.7 million at high-end jewelers and on chartered flight companies. Lawrence also spent investor funds by using the Landes Prive debit card to make thousands of purchases totaling more than $1 million. He used investor money to compensate individuals who connected Lawrence with the investors, to pay early investors in furtherance of the scheme, and to pay other entities and individuals affiliated with Lawrence. Those individuals and entities include Relief Defendants Justin D. Smith ("Smith"), Smith's entity Landes and Compagnie Trust Prive aka Landes & Compagnie Trst [sic] Prive KB ("Landes Trust KB"), Brenda M. Bisner ("Bisner"), and Bisner's entity HekYeah, LLC ("HekYeah") (collectively with Landes Prive, "Relief Defendants").

7.      To convince investors that their investments were profitable and safe, Lawrence sent weekly emails falsely reporting investors' purported weekly returns. Lawrence also provided investors with access to an online portal that he claimed showed investors that their money was secure in the agreed-upon non-depletion accounts. To lull investors who had requested a return of their purported profits or capital investment, Lawrence fabricated various reasons for months-long delays in returning the funds.

8.      At least 5 of the 11 investors have not received a return of their principal or any supposed investment profits despite weeks or months having passed after the conclusion of the purported trading programs in which they invested. Two investors have received some payments that Lawrence claimed represented a return of their principal investment, but these payments

3

were funded at least in part by deposits from later investors in the scheme.

9.      Lawrence's fraudulent investment scheme is ongoing. As recently as March 23, 2023, Lawrence obtained $100,000 from a new investor. On that same day, Lawrence spent approximately $91,000 at a luxury vehicle dealership in Connecticut. At a minimum, $87,641 of the $91,000 came from the new investor's funds.

10.      Lawrence knowingly and/or recklessly made representations and omissions of material fact regarding the investments at issue. Lawrence's conduct involved fraud and deceit and resulted in substantial investor losses.

11.      Accordingly, Lawrence violated the federal securities laws, including Section 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

12.      The SEC brings this action and seeks relief on an emergency basis to secure and preserve whatever investor funds and other collectible assets remain, to prevent future unjust enrichment of Lawrence and the Relief Defendants, and to hold Lawrence liable for his violations of the federal securities laws.

13.      The SEC seeks expedited relief including, among other things, (a) temporary and preliminary injunctive relief and (b) the entry of an asset freeze to secure and preserve investor funds, as well as related ancillary relief.

14.      Ultimately, Lawrence should be permanently enjoined from future violations of the anti-fraud provisions of the Securities Act and the Exchange Act. Lawrence and the Relief Defendants should be ordered to disgorge all of their ill-gotten gains, with prejudgment interest. The Court should also require Lawrence to pay a significant civil penalty, and preclude Lawrence from serving as an officer or director of a public company.

4

## JURISDICTION AND VENUE

15.     The SEC brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 [15 U.S.C. §77t(b), (d); §77v(a)], and Section 21(d) of the Securities Exchange Act of 1934 [15 U.S.C. §§78u(d) and 78aa(a)].

16.     This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)].

17.     Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Acts, practices, and courses of business constituting violations alleged herein have occurred within the jurisdiction of the United States District Court for the Eastern District of Wisconsin and elsewhere. Moreover, at least two victims of Defendant's alleged securities violations reside in this District.

18.     Lawrence directly and indirectly made use of the means or instruments of transportation or communication in, and the means and instruments of, interstate commerce or of the mails, in connection with the acts, practices, and courses of business alleged in this Complaint.

19.     There is a reasonable likelihood that Lawrence will, unless temporarily, preliminarily, and permanently enjoined, continue to engage in the transactions, acts, practices and courses of business set forth in this Complaint, and transactions, acts, practices and courses of business of similar purport and object.

## DEFENDANT

20.     **Charles T. Lawrence, Jr.**, age 49, is currently a resident of Connecticut, but resided in both New York, New York, and Dallas, Texas, during the relevant time period. Lawrence formerly worked as a trader at several SEC-registered entities, but has not been associated with an SEC-registered entity since 2012.

## RELIEF DEFENDANTS

21.     **Landes Prive, LLC** is a Delaware limited liability company formed in April 2019 with its principal place of business in New York. Landes Prive is not registered with the SEC in any capacity. Lawrence opened the Landes Prive bank account referenced in this Complaint in March 2020. Lawrence is the sole signatory of the Landes Prive bank account.

22.     **Landes and Compagnie Trust Prive a/k/a Landes and Compagnie Trst [sic] Prive KB** is a Wyoming entity formed in February 2017 and is in good standing. Smith formed Landes KB and controls accounts in the name of Landes KB. Landes KB received ill-gotten investor funds from Lawrence.

23.     **HekYeah, LLC**, is a Delaware limited liability company formed in October 2022 with its principal place of business in Texas. Bisner controls accounts in the name of HekYeah, and it received ill-gotten investor funds from Lawrence.

24.     **Justin D. Smith**, age 42, is a resident of Ohio. Smith has formed several entities that include Landes in their names. Smith, as well as certain Landes entities under his control, was issued a cease and desist order with a consent agreement on October 1, 2020 by the State of Ohio, Department of Commerce, Division of Securities. The order found that Smith acted as a securities salesperson and as an investment adviser representative while Landes KB was operating as an unlicensed securities dealer and/or investment adviser through its website,

6

www.landestrust.se. Smith, through an account in the name of Landes KB, received investor funds from Lawrence.

25.    **Brenda M. Bisner**, age 42, is a resident of Connecticut. Bisner has resided with Lawrence from time to time. Bisner received investor funds from Lawrence.

## RELATED ENTITY

26.    **Landes and Compagnie Trust Privé KB** was incorporated by Smith in Stockholm, Sweden in November 2016. Lawrence represented to investors that Swedish Landes KB was a financial services company. As of January 2023, the company was not active and had never been active, and had no physical employees in Sweden. Since at least February 2022, Swedish Landes KB entered into the Agreements with at least 5 of the 11 investors who sent money to the Landes Prive bank account at Financial Institution 1. Lawrence signed the Agreements as the Managing Director of Swedish Landes KB.

## FACTS

A.    Lawrence Solicited Investments in Private Placements

27.    Starting in at least February 2022 and continuing through the present, Lawrence solicited prospective investors through a fraudulent offering consisting of the offer and sale of investment contracts purportedly issued by Swedish Landes KB. Lawrence described the investments as "private placement opportunities" where investors, without risk to their principal, could earn weekly returns ranging from 25% to 100% on their investments during varying 8 to 20 week investment periods.

28.    Investors in these private placement opportunities entered into the Agreements. Lawrence signed the Agreements as Swedish Landes KB's Managing Director. Investors thought

they were investing with Swedish Landes KB, but that entity was apparently defunct by at least February 2022.

29.     In reality, Lawrence controlled the investors' funds because he directed investors to deposit their funds into the United States-based bank account of Landes Prive, over which Lawrence had sole signature authority.

30.     Since February 2022, Lawrence has raised at least $4,901,652 in investor funds from at least 11 investors. Seven of the investors reside in the United States, in six different states, with two investors residing in this District. Four of the investors reside abroad.

31.     Lawrence solicited investors through representations made by email and telephone calls, and also by using promoters. Lawrence compensated certain promoters with investor funds.

B.     Lawrence's False Representations about the Investments

32.     Before they invested, Lawrence had prospective investors sign the Agreement. In the Agreement, Lawrence made several false representations.

33.     First, Lawrence represented in the Agreement that investor's funds "will be in the client's Landes account and visible at all times," with at least one investor's Agreement further stating that the funds in the account will "be under the sole control of the client at all times." However, Lawrence orally represented to prospective investors that he would obtain a standby letter of credit or other collateral based on the amount of investor funds he raised. Lawrence explained to several investors that the letter of credit or collateral would facilitate his trading in securities, with the trading profits flowing *pro rata* back to investors.

34.     Next, Lawrence represented in the Agreement that an investor's "principal investment will be blocked but not at risk" and further, even "[i]f the trade is unsuccessful and

there are losses, the client's Principal funds are never depleted." Lawrence further represented in the Agreement that "[i]f the trade is unsuccessful and there are losses...there will be no delay in releasing the client's principal funds after [length of trading period] weeks."

35.     In addition, the Agreement presents the scope of the investment contract services as follows: "Client wishes to place [investment amount] into an accelerated trade program. Landes responsibilities shall be limited to Custody of initial capital and trade profits; trade management and allocation; Liaison between trade platform and client; maintenance and settlement of all securities and cash funds; establishing a brokerage account on behalf of the client."

36.     Lastly, the Agreement did not contain a representation that any party was entitled to compensation or to use investor funds for personal or business expenses. Rather, Lawrence orally represented to certain investors that Lawrence and/or Swedish Landes KB would be compensated from the trading profits prior to investors receiving their return on investment.

37.     During the same period, Lawrence also made a variety of additional false oral representations to investors about how his trading would make a profit. For example, on or about March 1, 2022, Lawrence claimed on a telephone call to at least one prospective investor— Investor B—that he was the brains behind an investment opportunity with, and had access to, the Abu Dhabi Investment Authority. He further claimed that this connection explained how he would be able to generate investment profits without risk to the investor's principal investment. On or about April 20, 2022, Lawrence told another prospective investor—Investor E—by telephone that the Swedish Landes KB platform allowed Lawrence to trade in futures, hedge funds, and crypto currency.

9

38.     Lawrence maintained the scheme by providing investors with a Landes login that purported to show their initial investment placed in a non-depletion account as promised. For example, on August 17, 2022, Lawrence caused an email to be sent from the email address accounts@landesbank.se to Investor G containing a username and password.

39.     Investors who logged into the portal saw a webpage that purported to show their unique account number, current balance, account type, account status (e.g., "Active"), the currency in which the account was denominated (e.g., "USD"), and recent debits and credits to the account.

40.     Lawrence also sent investors weekly emails showing a fictitious weekly return on investment. For example, on or about March 19, 2022, Lawrence sent Investor B an email stating: "Trading this week was successful and we managed a return of 118%." On or about March 26, 2022, Lawrence sent Investor B another email claiming that the investment had resulted in an 83% return that week. In reality, Lawrence began to misappropriate Investor B's funds the same day they were deposited.

C.     Lawrence Engaged in a Scheme to Misappropriate Investor Funds

41.     The statements and other representations Lawrence made to investors, as set forth above in paragraphs 32-40, were false. After investors sent their funds to the same Landes Prive bank account, the funds were never allocated to a unique Swedish Landes KB account, used to obtain a standby letter of credit or other collateral, used to trade securities, or otherwise used to make investments.

42.     Instead, the investor funds sat commingled in Lawrence's Landes Prive bank account, and Lawrence used the money for a variety of improper purposes, including payments for: personal expenses, to individuals who promoted the investments, to early investors, and to the Relief Defendants, among others.

10

43.     Lawrence's misappropriation began almost immediately in February 2022 and has continued since. For example:

a.      on February 16, 2022, Investor H sent three wires totaling approximately $250,000 to the Landes Prive bank account. Shortly before the investment, the Landes Prive bank account was overdrawn and had a balance of negative $558.96. In the two days following receipt of the $250,000 investment, Lawrence spent over $40,000 at Cartier, wired more than $27,000 to Bisner, wired $93,000 to a Landes Trust KB account in the control of Smith, and wired an apparent promoter $25,000 with a memo line including "commission";

b.      on March 7, 2022, Investor B wired approximately $536,500 to Landes Prive. That same day, among other uses, Lawrence sent $53,650 to the person who had introduced Investor B to Lawrence with the description "[Investor B] Commission," sent $25,000 to Bisner, and withdrew $35,600 in cash. At a minimum, $100,831 of the March 7, 2022 transfers came from Investor B's funds, which was the only deposit in Landes Prive's account from March 7, 2022 to March 16, 2022;

c.      On June 10, 2022, Investor F (a resident of this District) wired $500,000 to the Landes Prive checking account, leaving the account with a balance of approximately $1,175,000. Over the next two months, Lawrence used at least $428,984 of Investor F's money to pay other investors, on chartered private flights, to pay commissions to an individual who introduced Investor F to Lawrence, and/or for hundreds of debit card transactions. By

11

August 17, 2022, the balance in the Landes Prive account was down to $147,290.

      d.     more recently, on March 23, 2023, Lawrence obtained $100,000 from new Investor J and immediately spent $91,000 at a luxury car dealership, and based on Lawrence's bank account balance prior to the $100,000 deposit, at a minimum, $87,641 of the $91,000 came from Investor J's funds.

44.     In total, Lawrence misappropriated at least $4,890,798 from at least 11 investors.

45.     Although Lawrence told investors that their funds were secure, in actuality, the funds were at direct and immediate risk because Lawrence misappropriated almost all of the investor funds.

46.     Lawrence's spending for personal expenses included spending at least $1,260,000 at luxury jeweler Cartier and its parent company, paying at least $522,000 to chartered flight companies, and withdrawing approximately $159,000 in cash. For example, on June 7, 2022, Lawrence sent a wire in the amount of $958,204.55 from the Landes Prive account to the parent company of Cartier. The wire memo for this transaction reads, in its entirety, "KATE." None of the investors are named Kate.

47.     Lawrence also paid for an additional $1,021,934 of personal expenses using the Landes Prive debit card. Examples of these personal expenses include:

      a.     $97,433 to a luxury resort in St. Barthelemy ("St. Barts");

      b.     $67,519 to the Carlyle luxury hotel in New York City; and

      c.     $49,177 to Chanel.

48.     Lawrence did make some payments to certain investors, but the money he used was actually funds misappropriated from other investors. These Ponzi-like payments were made

to further Lawrence's scheme. For example, on September 27, 2022, Investor D (a resident of this District) wired $500,000 to the Landes Prive account. The next day, Lawrence wired $400,000 from the Landes Prive account to Investor B, who had sought the return of his principal investment after the purported investment period had ended. Based on the beginning balance and other deposits in the Landes Prive account, Lawrence misappropriated at least $268,146 of the $500,000 wire from Investor D to pay Investor B. In total, it appears that Lawrence spent approximately $871,000 on Ponzi-like payments to investors.

49.     Additionally, Lawrence transferred more than $689,000 of investor funds to the Relief Defendants, and received approximately $233,300 back from the Relief Defendants, resulting in net transfers of approximately $455,700 to the Relief Defendants. Specifically, Lawrence transferred:

a.     $472,700 to a Smith-controlled account in the name of Landes KB, and Smith paid $175,000 from the Landes KB bank account to the Landes Prive checking account, for a net transfer to Landes KB of approximately $298,700;

b.     $144,451 to Bisner's personal accounts; and

c.     $72,000 to a Bisner-controlled account in the name of HekYeah, and Bisner paid $58,200 from the HekYeah bank account to the Lanes Prive checking account, for a net transfer to HekYeah of approximately $13,800.

50.     As a result, based on records available to the SEC to date, Lawrence misappropriated all but approximately $10,854 of the currently identified $4.9 million of investor funds.

D. Lawrence Lulled Investors and Lied about the Status of the Investments

51. When certain investors asked for a return of their funds, Lawrence lied to them. For example:

    a. On or about June 17, 2022, Lawrence emailed Investor B, stating that the return of funds had been initiated at the "traders bank" but had been held up by compliance;

    b. In July 2022, Lawrence told Investor B by text message or telephone that someone in Abu Dhabi wanted their "palms greased" before funding could be disbursed;

    c. Lawrence told Investor E in approximately August 2022, and Investor B in approximately September 2022, by telephone, that investors needed to keep their principal in the Landes Prive account or risk missing out on their purported profits;

    d. In approximately October 2022, Lawrence told Investor B by telephone that Landes Prive had an investment committee that had to decide on whether to disburse funds; and

    e. In emails dated February 2, 2023, February 14, 2023, and February 22, 2023, Lawrence gave Investor G a variety of excuses for the delay in returning his funds from a supposedly completed investment, including that the trading platform was "awaiting a delayed settlement of a traded instrument," that the funds "should [be] released later tomorrow or Thursday morning," and "[w]e are on it."

14

52.     At least 5 investors are now well beyond the conclusion of their purported trading program but have not received the return of either their principal or purported profit, other than the two investors who received Ponzi-like payments. Contrary to the Agreement's representation that "there will be no delay in releasing the client's principal after [the end of the investment period]," no investors have received full repayment of their principal. Nor have they received the extraordinary returns Lawrence said they should expect and, in some cases, supposedly obtained for them.

53.     Lawrence's misappropriation, which began in February 2022 and persisted through at least March 2023, will likely continue barring emergency action by the Court.

54.     Furthermore, Lawrence is a significant flight risk. Lawrence has spent hundreds of thousands of dollars of investor funds on international travel, including chartered flights and luxurious resorts. If Lawrence learns about any action against him, he may attempt to flee with the assets purchased with ill-gotten investor funds.

## COUNT I

### Violations of Section 17(a)(1), (2), and (3) of the Securities Act
### (Against Defendant Lawrence)

55.     The SEC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

56.     By engaging in the conduct described in this Complaint, Lawrence, directly or indirectly, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) employed devices, schemes and artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

and/or (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers or prospective purchasers.

57.　　Lawrence acted intentionally, with severe recklessness and at least negligently in the fraudulent conduct described above.

58.　　By reason of the foregoing, Lawrence violated, and unless enjoined will likely again violate, Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(1), 77q(a)(2), and 77q(a)(3)].

## COUNT II

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against Defendant Lawrence)

59.　　The SEC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

60.　　By engaging in the conduct described in this Complaint, Lawrence, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails: (a) used and employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud and deceit upon purchasers and prospective purchasers of securities.

61.　　Lawrence acted with *scienter* in that he knowingly or with severe recklessness made the material misrepresentations and omissions and engaged in the fraudulent conduct and/or scheme described above.

62.     By reason of the foregoing, Lawrence violated, and unless enjoined will likely again violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

## COUNT III

### (Against All Relief Defendants)

63.     The SEC realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 as if fully set forth herein.

64.     Relief Defendants Landes Prive LLC, Landes and Compagnie Trust Prive aka Landes and Compagnie Trst Prive KB, HekYeah, LLC, Justin D. Smith, and Brenda M. Bisner received improper and illegal transfers of investor money from Lawrence, even though they had no right to receive any investor funds.

65.     By reason of the foregoing, Landes Prive LLC, Landes and Compagnie Trust Prive aka Landes and Compagnie Trst Prive KB, HekYeah, LLC, Justin D. Smith, and Brenda M. Bisner have been unjustly enriched and may be compelled to return any investor funds they still hold, and may be held liable for all of the transfers of investor funds they received.

### RELIEF REQUESTED

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendant Charles T. Lawrence, Jr. committed the violations alleged herein.

### II.

Issue an Order of Permanent Injunction restraining and enjoining Defendant Charles T. Lawrence, Jr., and his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction, by personal

service or otherwise, and each of them from, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder.

## III.

Grant other appropriate injunctive emergency interim relief, consistent with Rule 65(d) of the Federal Rules of Civil Procedure, as well as permanent injunctive relief, to protect investors, including: (i) a Temporary Restraining Order and Order of Preliminary Injunction against Defendant Charles T. Lawrence, Jr. restraining and enjoining him as set forth in this Section and Section II of the Relief Requested; (ii) an Order restraining and enjoining Defendant Charles T. Lawrence, Jr. and his officers, agents, servants, employees, attorneys, subsidiaries and affiliates, and those persons in active concert or participation with him who receive actual notice of the injunction, by personal service and otherwise, and each of them, from directly or indirectly soliciting, accepting, or depositing any monies obtained from actual or prospective investors pending resolution of this action; (iii) an Order freezing the assets of Defendant Charles T. Lawrence, Jr. and the Relief Defendants and providing for other ancillary relief necessary to effectuate the preservation and recovery of their assets; (iv) an accounting by Defendant Charles T. Lawrence, Jr.; (v) an order prohibiting the destruction, mutilation, concealment, alteration, or disposition of books and records; and (vi) other ancillary relief, including expedited discovery and surrender to the Clerk of Court of Defendant Charles T. Lawrence Jr.'s passport(s).

## IV.

Order Defendant Charles T. Lawrence, Jr. to disgorge his ill-gotten gains received as a result of the violations alleged in this Complaint, together with prejudgment interest thereon, pursuant to Section 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C.

§§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)] and order the Relief Defendants to disgorge the amounts by which they were unjustly enriched, together with prejudgment interest thereon.

## V.

Order Defendant Charles T. Lawrence, Jr. to pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## VI.

Issue an Order, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] permanently prohibiting Defendant Charles T. Lawrence, Jr. from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l)] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## VII.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant such other and further relief as this Court deems to be just and necessary.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff SEC hereby

requests a trial by jury on all claims so triable.

Respectfully submitted,

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By:

Daniel J. Hayes (hayesdj@sec.gov)
BeLinda I. Mathie (mathieb@sec.gov)
Amy S. Cotter (cottera@sec.gov)
Matthew T. Wissa (wissam@sec.gov)
U.S. Securities and Exchange Commission
Chicago Regional Office
175 West Jackson Blvd., Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
*Attorneys for Plaintiff*

20